IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| THE STATE OF GEORGIA, | ) | |
| | ) | CIVIL ACTION NO. |
| | ) | 1:23-CV-03720-SCJ |
| | ) | |
| v. | ) | |
| | ) | RE: NOTICE OF REMOVAL |
| | ) | OF FULTON COUNTY |
| | ) | SUPERIOR COURT |
| DAVID JAMES SHAFER, | ) | INDICTMENT NO. |
| | ) | 23SC188947 |
| Defendant. | ) | |

### STATE OF GEORGIA'S RESPONSE IN OPPOSITION TO TO DEFENDANT DAVID J. SHAFER'S NOTICE OF REMOVAL

**FANI T. WILLIS**
**DISTRICT ATTORNEY**
**ATLANTA JUDICIAL CIRCUIT**
F. McDonald Wakeford
Chief Senior Assistant District Attorney
Atlanta Judicial Circuit
Georgia Bar No. 414898
136 Pryor Street SW, Third Floor
Atlanta, Georgia 30303
Fmcdonald.wakeford@fultoncountyga.gov

Anna Green Cross
Special Prosecutor
Atlanta Judicial Circuit
Georgia Bar No. 306674
136 Pryor Street SW, Third Floor
Atlanta, Georgia 30303
anna@crosskincaid.com

Defendant David J. Shafer joins several co-defendants in advancing an unconvincing theory of federal official removal that would permit the removal of the pending State criminal prosecution charging him with multiple felony offenses in Fulton County Superior Court to this Court.  Generally, 28 U.S.C. § 1442(a) is available to federal officials or those acting at the direction of a federal official carrying out a federal function—Defendant Shafer meets neither of these conditions.  Instead, Defendant and others falsely impersonated genuine "duly elected and qualified" electors at the direction of the losing Trump presidential campaign—actions in furtherance of a criminal conspiracy that resulted, in part, in the pending Fulton County indictment—and Defendant asserts no coherent theory on how his false representations confer federal officer status.  Because he fails to meet the Section 1442(a) test for removal, the State of Georgia respectfully requests that this Court decline to authorize removal in this case.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A. The Election and Certification of Presidential Electors

On Tuesday, November 3, 2020, the State of Georgia joined the rest of the United States in holding an election for—among other federal, state, and local offices—the President of the United States.  As chief election official, the task fell to Georgia Secretary of State Brad Raffensperger to certify the votes cast for all

presidential candidates "not later than 5:00 P.M. on the seventeenth day following the date on which such election was conducted." O.C.G.A. §§ 21-2-50(b), 20-2-499(b). Georgia law further requires that the Governor "certify the slates of presidential electors receiving the highest number of votes . . . no later than 5:00 P.M. on the eighteenth day following the date on which such election was conducted." O.C.G.A. § 20-2-499(b). Both Governor Kemp and Secretary Raffensperger performed these duties in a timely manner, with Governor Kemp certifying on November 20, 2020 that the Democratic slate of electors had prevailed and appointing that group as the official Georgia slate of presidential electors. Ex. 1 (Nov. 20, 2020 Certification). This certification came after both (1) the initial counting of ballots, and (2) a statewide hand count ordered by the Secretary of State revealed that President Biden had prevailed by more than ten thousand votes.

The Trump campaign requested a recount as contemplated by O.C.G.A. § 21-2-495(c)(1) (permitting recount where the margin of victory is less than one-half of one percent). The results of that recount, the third counting of ballots for Georgia's presidential election, demonstrated a final margin of 11,779 votes in favor of Biden. Ex. 2 (Secretary of State Certification of Recount). Governor Kemp again certified the results on December 7, 2020, alerting the National

Archives and Records Administration that the State of Georgia had appointed the Democratic slate Electors of the President and Vice President for the State of Georgia. Ex. 3 (December 7, 2020 Certification).

**B. The Fraudulent Elector Scheme**

Defendant and the other nominated electors representing the losing Trump campaign opted to pretend otherwise. Despite the now obvious and repeatedly confirmed fact that then-President Trump had lost the presidential election in Georgia, and consequently that the Republican-nominated slate of electors were not appointed by the State of Georgia to vote in the Electoral College proceeding, the group mimicked the actions of the genuine Democratic slate of electors by meeting on December 14, 2020 at the State Capital. [Doc. 1], 5 (Defendant acknowledging the group met at the Capital building). Defendant presented himself as the presiding officer of the gathering, falsely certifying that the group were the "duly elected and qualified Electors for President and Vice President of the United States from the State of Georgia," and purporting to give Georgia's 16 Electoral College votes to Trump:

**CERTIFICATE OF THE VOTES OF THE**

**2020 ELECTORS FROM GEORGIA**

\*\*\*\*\*\*\*\*\*\*

WE, THE UNDERSIGNED, being the duly elected and qualified Electors for President and Vice President of the United States of America from the State of Georgia, do hereby certify the following:

    (A) That we convened and organized at the State Capitol, in the City of Atlanta, County of Fulton, Georgia, at 12:00 noon on the 14th day of December, 2020, to perform the duties enjoined upon us;

    (B) That David J. Shafer presided and Shawn Still served as Secretary for the meeting.

    (C) That the undersigned 2020 Electors from the State of Georgia cast each of their respective ballots for President of the United States of America, as follows:

**FOR DONALD J. TRUMP – 16 VOTES**

Ex. 4 (Fraudulent Elector Certificate).

Shafer repeatedly refers to himself and the fellow nominee electors as "contingent," despite no such qualification included in the certificate. *Compare id. with* [Doc. 1], 5. "Contingent electors," of course, are not presidential electors at all, and Defendant directs this Court to no relevant legal authority that would substantiate the argument that the losing candidate's nominees have any recognized status after the counting is complete and results are certified. Either the contingency is met, and the "contingent electors" become actual presidential electors upon the electoral victory of their presidential candidate, or—as was the case here—the contingency never arises and the losing candidate's slate of electors plays no further role.

Of course, this group of sham electors was anything but duly elected or qualified.  Nevertheless, Defendant then caused the false certificates to be sent to the President of the Senate, the Archives of the United States, the Georgia Secretary of State, and the Chief Judge of the Northern District of Georgia, as would be appropriate if the false slate of electors had been genuine.  *Id.*  As alleged in the indictment, Defendant and his co-defendants conspired to subvert the electoral process.  [Doc. 1-1], 30-32 (detailing scheme to have Trump elector nominees attempt to cast electoral votes in Georgia, Arizona, Michigan, Nevada, Pennsylvania, and Wisconsin, despite Trump's loss in each of those states).

As a result of these actions, Defendant and several co-defendants face charges brought in Fulton County Superior Court related to the scheme, including Violation of the Georgia RICO Act (O.C.G.A. §16-14-4), Impersonating a Public Officer (O.C.G.A. § 16-10-23), two counts of Forgery in the First Degree (O.C.G.A. § 16-9-1), three counts of False Statements (O.C.G.A. § 16-10-20), and Criminal Attempt to File False Documents (O.C.G.A. § 16-4-1 and 16-10-20.1).  [Doc. 1-1] (Cts. 1, 8, 10, 12, 14, 16, 18, 40).  It is this pending criminal action that Defendant Shafer seeks to have removed to this Court.

### C. Defendant Has Produced No Evidence That He Held Federal Office, Or That He Acted At The Direction Of Any Federal Official

5

In December 2020, at the time of the acts alleged in the Indictment, Defendant was a private citizen with no federal employment or title.  Despite that, Defendant insists to this Court that he was in fact a "federal official" within the meaning of 28 U.S.C. § 1442(a)(1) (providing for federal jurisdiction over "any officer (or any person acting under that officer) of the United States" for or relating to "any act under color of such office" ), or alternatively, that he was "acting under" a federal official (namely, then-President Trump).  [Doc. 1], 19 (claiming Defendant "acted at the direction of the incumbent President and other federal officials," but detailing only communication with attorneys for Trump campaign litigation).  Defendant ignores the inconvenient facts that undercut his theory, including:

- Shafer and the other Republican nominees were not genuine presidential electors, they were **impersonating** presidential electors by signing a certificate stating they were duly elected and certified when they had not been;

- Governor Kemp had certified on December 7, 2020, that the Democratic slate of presidential electors would represent Georgia, with Republican nominees having no role in the counting of presidential electors;

- By December 14, 2020, there was no recount pending in Georgia nor was there any legal vehicle that could have potentially resulted in the

"flipping" of Democratic presidential electors to be substituted with the Republican presidential nominees[1];

- Defendant's own assertion is that he acted pursuant to advice from legal counsel representing Trump and Shafer himself in the election litigation, and for the purpose of preserving the challenge to the election results, not any true federal function, [Doc. 1], 19;

- Defendant makes no representation that he had direct contact with **any** federal official, going no further than to allege he took the advice of attorneys and operatives representing the Trump campaign and his own attorneys in the election contest filed in Fulton County.  *Id.*

Defendant simply has not supported his assertion of "federal official" status with facts that would enable this Court to reach that conclusion.

## II. ARGUMENT

Defendant seeks to remove his pending criminal case under Section 1455, on the basis that, at the time he engaged in the conduct described in the indictment related to the fraudulent elector scheme, he was a "federal officer" under 28 U.S.C. § 1442(a)(1).  Shafer, of course, can make no such showing.  Federal officer removal is limited to (1) any officer, agent, or agency of the United States (2) "for

---

[1]     Even if the Trump campaign's election contest filed in Fulton County Superior Court on or about December 4, 2020 had been successful (which it could not have been, due to glaring procedural and substantive deficiencies; those plaintiffs ultimately voluntarily dismissed the case), the only lawful remedy that could be imposed by a court is a new election, not the "flipping" of one slate of electors for another.  *See* O.C.G.A. § 21-2-527(d) (authorizing setting aside an election shown to be defective as to place in doubt the result, and permitting a second election).

[or relating to] any act under color of such office" so long as they can (3) "raise a colorable defense arising out of its duty to enforce federal law." *Florida v. Cohen*, 887 F.2d 1451, 1454-55 (11th Cir. 1989).  The removing party bears the burden of demonstrating that removal is proper, and if the non-removing party "appropriately challenges" the facts presented in the notice of removal, the removing party "must support [its factual averments] by competent proof." *People v. Trump*, 2023 U.S. Dist. LEXIS 124733, *15 (S.D.N.Y. 19 July 2023) (citations omitted).

Here, Defendant cannot satisfy any of the three criteria.  He is woefully short of asserting sufficient facts to meet the first prong—Shafer and the other fraudulent electors were not acting as, or at the direction of, federal officials in any legally recognized understanding of that role.  Moreover, even legitimate presidential electors serve as agents of the individual States, not as federal officials entitled to 28 U.S.C. § 1442(a)(1) removal.  *See Ray v. Blair*, 343 U.S. 214, 224-25 (1952) (presidential electors are agents of the States, not federal officers or agents). Finally, Shafer's explanation that he accepted advice from a Trump campaign attorney is not the Section 1442 equivalent of taking direction from a federal official within the scope of that official's role—at best, he and the other fraudulent electors followed the lead of the Trump campaign and from State Republican party

attorneys to further *the campaign*'s litigation and goals, not any federal function, and which, in any event, fall far outside the scope of removable activity.

Shafer's failure to overcome the first "federal official" hurdle ends the inquiry. *City of Brunswick v. Honeywell Int'l, Inc.*, No. CV 222-132, 2023 U.S. Dist. LEXIS 155502, at *11 (S.D. Ga. Sep. 1, 2023) (after determining Defendant failed to satisfy that they were acting under direction of a federal officer, "the Court does not address whether Defendants satisfy the second and third prong, and the Court finds the federal officer removal statute does not apply"). But even should this Court consider the remaining prongs, Defendant fails to meet his burden. Impersonating certified presidential electors in service to a political campaign cannot be seriously within the scope of any federal role, and Defendant gives the legal analysis on that point cursory treatment. [Doc. 1], 21-22 ("The connection between [the charged] conduct alleged in the Fulton County Indictment and Mr. Shafer's action as a contingent Presidential Elector is clear."). None of the alleged crimes charged in the Indictment fall within the range of any federal official duties, least of all for Defendant acting in furtherance of a political ally's purely campaign-related goals. "[T]he long-recognized purpose of federal-officer removal is the protection of federal *authority*[—t]here is no federal authority to protect here." *State v. Meade*, 2022 U.S. Dist. LEXIS 28535, *18 (S.D. Ohio Feb.

17, 2022) (emphasis in original) (citing *Tennessee v. Davis*, 100 U.S. 257, 263 (1880)).

Similarly, Defendant's proffered federal defenses of Supremacy Clause immunity, Preemption, First Amendment and Due Process defenses, are creative but find no support in the law, instead stating declarations of applicability without legal or factual backing.  [Doc. 1], 25-30.  Even less convincing is his demand for habeas relief seeking to enjoin the state prosecution, an injunctive remedy this Court has already declined to order for co-Defendants Meadows and Clark for reasons that apply equally if not more strongly here.  In short, Shafer's demands fail on every level.

## A. Defendant Shafer Is Not A Federal Official Within The Meaning Of Section 1442(a).

To repeat the governing standard that is now well-known to this Court, Section 1442(a) authorizes a defendant to move a state criminal prosecution to federal court if the defendant is:

> [A]ny officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . . .

28 U.S.C. § 1442(a)(1); *see also Hurt-Whitmire v. Georgia*, 336 F. App'x 882 (11th Cir. 2009).  Section 1442 applicability is not unlimited, and Defendant's impersonation of a presidential elector to further a conspiracy to overturn the 2020

presidential election, unsurprisingly, falls far outside its scope.

### 1. Defendant derives no federal officer status by impersonating a presidential elector.

Defendant's entire theory—that by virtue of his role as a "contingent" presidential elector, he took on the role of a federal officer entitled to Section 1442(a) removal—finds no support in the facts or the law. Defendant was never a recognized presidential elector with any role to fulfill, federal or otherwise.

By the time Defendant and the other losing Republican elector nominees met, Governor Kemp had twice certified the Democratic slate of presidential electors; there was no valid means by which the group could have been "duly elected and qualified," as the document represented, when the Democratic slate had already filled that role and there was no legal mechanism for a slate of electors to be "flipped" to the losing candidate. *Compare* Ex. 4 (Fraudulent Elector Certificate) *with* Ex. 3 (Dec. 7, 2020 Certification); *see also* O.C.G.A. § 21-2-527(d) (remedy for an election contest is setting aside an election shown to be defective, and scheduling a second election). Defendant confuses his fiction with the truth, and demands this Court do the same; he impersonated a "presidential elector," and based on nothing more than that pretense, he insists on legal recognition of that status. His position is the equivalent of claiming that a

homemade badge could transform him into a genuine United States Marshal with all the powers afforded that role.

Moreover, Defendant's own representations to the Court undermine his argument that he believed he was a true presidential elector—he acted in compliance with the directives of the State party, of which he was Chairman, and Trump campaign legal counsel "to preserve the presidential election contest" in which Defendant was also a plaintiff.  [Doc. 1], 19.  Advancing the election contest, on behalf of yourself or a political ally, serves no federal function and provides no basis to conclude he acted in any federal role.  *See generally New York v. Fried*, 897 F. Supp. 669, 670 (N.D.N.Y. 1995) ("[Defendant] has failed to submit any evidence along with the instant petition for removal which demonstrates that he has been performing work for the federal government either as its employee or at its request").[2]  Here, Defendant was simply the nominated elector for the losing presidential candidate, taking direction from the failed candidate's campaign—a status that affords no removal protection.

---

[2]     The mere assertion that a person is acting as a federal officer is insufficient to justify removal absent some evidentiary basis.  *See generally Honeywell Int'l, Inc.*, 2023 U.S. Dist. LEXIS 155502 (rejecting removal where Defendants failed to establish they "acted under" a federal officer);  *Swanstrom v. Teledyne Cont'l Motors, Inc.*, 531 F. Supp. 2d 1325, 2008 U.S. Dist. LEXIS 24020 (S.D. Ala. 2008) (airplane manufacturer unable to establish legitimate basis for federal officer removal because it did not establish that it was designated in any manner as representative of FAA or to act on the agency's behalf in performing official duties).

Repeated invocations to "precedent" allegedly set in Hawaii during the 1960 presidential election misses the mark by a wide margin.  *See* [Doc. 1], 8-9; [Doc. 1-4] (affidavit of Todd Zywicki[3]).  First, and this principle hardly seems necessary to explain, actions that did not result in prosecution 60 years ago—in a different jurisdiction, with different election code and criminal statutes, presided over by different prosecuting agencies, and with differing substantive evidence of criminal intent—provides zero protection for Defendant Shafer and his co-defendants who conspired to advance the 2020 fraudulent elector scheme in Georgia.

Second, the factual situations are so readily distinguishable as to make the comparison meaningless.  In 1960, by the December 19 date by which the Hawaii electors met, the Republican slate of electors had been certified by the Governor based on the initial tally of votes but due to the close margin of less than 150 votes, an official recount was ongoing.  In the present case, when Defendant Shafer and the other fraudulent electors met, *two* recounts had already been *completed*, each of which confirmed a margin of victory for then-candidate Biden of thousands of votes.

---

[3]        The State objects to the relevance of the affidavit of Mr. Zywicki insofar as it offers an interpretation of Georgia law and any legal opinion.  The Court has the responsibility of determining the relevant facts and applying the applicable law, and those straightforward tasks would hardly benefit from the parties parading in untold numbers of experts with varying degrees of qualification and credibility to opine on the issues before the Court.

Additionally, in Hawaii, when the recount resolved in the Democratic candidate's favor (President John F. Kennedy) on December 28, and only after a court affirmed the process, the Governor of Hawaii **re-certified** the election and appointed the Democratic slate of electors.[4]  Ex. 6 (Hawaii re-certification).  It was this official certification of the Democratic electors that was counted in the Electoral College tally on January 6, 1961.  Defendant and the other fraudulent electors had no such official stamp of approval.  Their losing effort was **never** reversed by a recount, **never** subjected to the supervision of any court, **never** certified by the Governor, and **never** sent through official channels to the Senate. Instead, it was used to further a clumsy but relentless pressure campaign on the Vice President and state legislatures, and as a means to publicly undermine the legitimate results of the presidential election.  There is no guiding precedent here.

### 2. Presidential electors perform a federal function through the exercise of State authority and are not federal officials themselves.

An even more fundamental shortcoming with Defendant's position is that even the genuine presidential electors sanctioned by the State based on a certified

---

[4]     While the Zywicki affidavit refers to an attached exhibit (Exhibit B) that includes the referenced Hawaii certification documents, no exhibits were electronically filed or otherwise served on counsel for the State.  *See* [Doc. 1-4], 8 (¶ 12).

election are State actors, not federal, and well outside the scope of appropriate

federal removal.  As the United States Supreme Court has noted:

> [T]he presidential electors exercise a federal function in balloting for
> President and Vice-President **but they are not federal officers or
> agents** any more than the state elector who votes for congressmen.
> They act by authority of the state that in turn receives its authority from
> the Federal Constitution.

*Ray v. Blair*, 343 U.S. at 224-25 (emphasis added); *see also Chiafalo v.

Washington*, __ U.S. __, 140 S. Ct. 2316, 2324-25 (2020) (citing *Ray*, accepting

that electors are state actors, and finding no constitutional prohibition on states

imposing penalties for faithless electors).

Defendant's particular standing as a fraudulent elector—uncertified and

unofficial with no state or federal authority—makes a detailed exploration into the

history and evolution of presidential electors largely unnecessary for the issue

before the Court; it is enough to note that it has long been recognized that:

> The sole function of the presidential electors is to cast, certify and
> transmit the vote of the State for President and Vice President of the
> nation. **Although the electors are appointed and act under and
> pursuant to the Constitution of the United States, they are no more
> officers or agents of the United States than are the members of the
> state legislatures when acting as electors of federal senators, or the
> people of the States when acting as electors of representatives in
> Congress**.

*In re Green*, 134 U.S. 377, 379-80 (1890) (emphasis added); *see also Walker v.

United States*, 93 F.2d 383, 388 (8th Cir. 1937) ("It is contended by defendants

that presidential electors are officers of the state and not federal officers. We are of the view that this contention is sound and should be sustained." (citation omitted)). Instead, the Constitution provides those presidential electors act under State authority. *Ray*, 343 U.S. at 224-25. And while Article II and the Twelfth Amendment give States broad power over electors, those provisions give electors themselves no rights. *Chiafalo*, 140 S. Ct. at 2328.

### 3. Defendant was not acting at the behest of any federal official performing an official function; the evidence shows at most he was a political actor serving a campaign function.

Defendant argues to this Court that, even if he were not a federal official in his own right, he was acting at the behest of then-President Trump and his campaign, and that translates into federal officer status for his actions. [Doc. 1], 19. But even accepting Defendant's representation that his intent was to assist the then-President (and now co-defendant) Trump in employing the fraudulent elector scheme in states across the country, that would be assisting Trump in his personal capacity as a *candidate*, not as President. As the testimony already before this Court has demonstrated, the then-President had no authority whatsoever to direct action of State certification or administration of electors. Ex. 5 (Removal Hrg. Tr. at 189, *State of Georgia v. Mark Meadows* 1:23-CV-03621-SCJ (N.D. Ga. Aug. 28, 2023)) (testimony of Secretary of State Brad Raffensperger). The litigation

16

brought in Fulton County Superior Court that Defendant and his co-defendants were trying to advance was brought—and could only have been brought—by Trump as an individual candidate and the Trump campaign, not Trump in his official role as President. *See DONALD J. TRUMP, in his capacity as Candidate for President, DONALD J. TRUMP FOR PRESIDENT, INC., and DAVID SHAFER, in his capacity as a registered voter and Presidential Elector pledged to DONALD TRUMP for President. v. Raffensperger et al.*, Case No. 2020CV343255 (Fulton Cty. Super. Ct.). The facts simply do not support that Defendant acted under the direction of any federal official in an official capacity.

While the phrase "acting under" is broad and Courts will "liberally construe" this portion of § 1442(a)(1), the criteria still has meaning. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007). Even that deferential standard cannot accommodate a private person working to assist a political campaign. A "private person's 'acting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Watson*, 551 U.S. at 152 (emphasis in original; citations omitted). In other words, the private person must help federal officers fulfill a basic **governmental task** that the government otherwise would have had to perform. *Id.* at 153-54 (emphasis added). Defendant's notice

articulates no theory of the "basic governmental task" that was fulfilled by his impersonation of a genuine presidential elector certified by the State of Georgia.

The reason why Defendant identifies no governmental task his legally fictitious status as a "contingent elector" assisted with is because there was none—his actions as charged were to advance the purely personal and political goals of securing a second term for his preferred presidential candidate, an undertaking decidedly outside the scope of any required governmental task. Indeed, Defendant claims he was seeking to safeguard litigation remedies in a case *in which he was a plaintiff*. Federal law and regulations explicitly separate campaign activities from that of the government itself, making campaign work performed at the behest of a federal official **outside** the scope of federal removal. *See* 5 U.S.C. §§ 7323(a), 7324(a) (prohibiting government employees from engaging in partisan political activity). Defendant could not have been acting to assist or carry out campaign functions of a federal official that are entirely outside the scope of any legitimate federal function. Because the first requirement of removal is unmet, the inquiry can end here.

### B. Nor Has Defendant Demonstrated That He Has Been Charged "For [Or Relating To] Any Act Under Color Of Such Office."

Defendant offers a scant justification for his claim that his participation in this criminal conspiracy to overturn the 2020 presidential election connected in any

way with a legitimate federal officer role for obvious reasons.  [Doc. 1], 21-22.

"The phrase 'relating to' . . . requires only a 'connection' or 'association' between

the act in question and the federal office." *Caver v. Cent. Ala. Elec. Coop.*, 845

F.3d 1135, 1144 (11th Cir. 2017) (internal citations omitted).  While not a

particularly high hurdle, the caselaw is clear that "[n]ot every act of or on behalf of

a federal officer is an act under color of office."  *People v. Trump*, 2023 U.S. Dist.

LEXIS 124733, at *20 (S.D.N.Y. July 19, 2023).  "[T]he person seeking the

benefit of [federal officer removal] should be candid, specific and positive in

explaining his relation to the transaction growing out of which he has been

indicted, and in showing that his relation to it was *confined to his acts as an*

*officer*."  *Colorado v. Symes*, 286 U.S. 510, 520 (1932) (emphasis added).

Defendant Shafer offers no such connection to legitimate federal functions.

     As discussed above, "contingent electors" are not electors at all, and even

genuine presidential electors are explicitly *not* federal officers.  To the extent

Defendant contends that he and his co-defendants were directed to act by then-

President Trump in his official capacity, that representation (1) has no factual

support and (2) cannot survive the slightest scrutiny.  Defendant points to

communication with only unnamed "attorneys" for Trump and the State

Republican party advising on campaign litigation, with no federal connection at all.

[Doc. 1], 19.  Shafer has produced no evidence of any communication or direction from any federal official acting within the scope of any federal function, and cannot satisfy even the low burden of demonstrating that impersonating presidential electors was connected to any federal officer's duties.

Reliance on Trump the candidate provides no support; the law recognizes that even a president is not entitled to immunity for "unofficial acts grounded purely in the identity of his office."  *Clinton v. Jones*, 520 U.S. 681, 693 (1997).  There is an "outer perimeter" to a president's legitimate federal function beyond which he engages in private conduct, and personal campaign activity surely falls into that private activity outside a president's legitimate federal function.  *Id.*; *see also Trump v. Vance*, ___ U.S. ___, 140 S. Ct. 2412, 2429 (2020) (a president's personal papers are distinct from official documents and not entitled to the heightened showing required for a subpoena).  Employing an analysis that considered "the relationship of the challenged conduct to the claimed corresponding function of the President," another federal court has already found that Trump's acts of "direct outreach to state election officials" were "not official acts."  *Thompson v. Trump*, 590 F. Supp. 3d 46, 82-83 (D.D.C. 2022).  Similarly, Defendant's false representation that he and the other losing nominated electors were "duly elected and qualified," along with the attempt to have the votes of the

losing slate counted in the Electoral College "do not relate to [the President's] duties of faithfully executing the laws, conducting foreign affairs, commanding the armed forces, or managing the Executive Branch." *Id.* at 84. "They entirely concern his efforts to remain in office for a second term." *Id.*

Further, "a sitting President is prescribed no role" in the election of a president. *Id.* at 77. While the Constitution and the Electoral Count Act specify the duties of various officials in Congress and at the state level, there is no role whatsoever for the president to play in any State's presidential election certification process, and thus there is no authority that Defendant can cite to claim his activities were taken "under color of office," even if done at the behest of the then-president. *See id.* at 77-78. Just as Defendant has failed to satisfy the federal official requirement, this removal inquiry should end for the independent reason that he has not satisfied the second requirement for removal.

### C. Defendant Has No Colorable Federal Defense

As Defendant failed to satisfy either of the first two Section 1442(a) criteria, he likewise falls short of the third benchmark. To remove a case under Section 1442, a defendant also must raise a "colorable federal defense." *Mesa v. California*, 489 U.S. 121, 136 (1989). In the context of removal, "colorable" means "plausible." *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th

Cir. 1996).  Defendant offers several supposed available federal defenses, none of which have any applicably to the pending charges because as a losing nominated presidential elector, **he had no federal role to carry out**.  [Doc. 1], 22-30.

First, Supremacy Clause immunity is plainly out of Defendant's reach, as it requires him to show both that he was performing "an act which he was authorized to do by the law of the United States" and, in performing that authorized act, "he did no more than what was necessary and proper for [him] to do." *In re Neagle*, 135 U.S. 1, 75 (1890).  In this Circuit, a defendant's claim of Supremacy Clause immunity is negated by evidence that the individual acted out of "personal interest, malice, actual criminal intent, or for any other reason than to do [their] duty as [they] saw it." *Baucom v. Martin*, 677 F.2d 1346, 1350 (11th Cir. 1982).

Defendant, of course, had **no** federal duty.  The fact that he and the other fraudulent electors pretended to be duly elected and qualified confers no federal official standing whatsoever, and no federal action to be protected with immunity.  The activities in which he and his co-defendants conspired were all "unofficial" activities concerning campaign litigation and Trump's efforts to remain in office for a second term, and there is no federally protected authority for a president or anyone acting on his behalf to take any actions concerning the administration of a presidential election under either the Constitution or federal law.  A claim of

22

immunity for unofficial acts cannot be "grounded purely in the identity of [the President's] office." *Clinton*, 520 U.S. at 695.  Additionally, accepting Defendant's claim that he sought only to secure a remedy in litigation, it was *his own litigation*, meaning that his activities were by definition motivated by personal interests.

Next, Defendant's perfunctory assertion of a preemption defense likewise fails.  Shafer points to the Electoral Count Act's contemplation of "purported electors" competing with certified electors, but does nothing to grapple with the State's unquestionable ability to determine which electors are authorized to submit votes.  *Ray*, 343 U.S. at 224-25; *Chiafalo*, __ U.S. __, 140 S. Ct. 2316, 2324-25 (states have wide latitude to govern selection and obligations of presidential electors).  When courts consider issues that arise under the Supremacy Clause (i.e., preemption issues), they start with the assumption that the historic police powers of the States are not superseded by federal law unless preemption is the clear and manifest purpose of Congress.  *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1121-22 (11th Cir. 2004) (citing *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).  Again, there was **no federal role** inherent in Defendant's

impersonation of a presidential elector.  As such, Defendant makes no showing that federal law preempts the State charges he faces.[5]

Similarly, there is no demonstrable basis for federal authority related to Defendant's actions, and there is ample evidence of personal, political, and unofficial intentions and activities—all of which make the cursory claims of other federal defenses unavailable.  The First Amendment provides no protection from criminal liability in this instance, when the underlying speech is false.  *See generally Bill Johnson's Rests, Inc. v. NLRB*, 461 U.S. 731, 743 (1983) ("Just as false statements are not immunized by the First Amendment right to freedom of speech, baseless litigation is not immunized by the First Amendment right to petition." (internal citation omitted)).  And while Defendant may certainly have a right to petition the government for redress, he has no right to present documents making false representations of fact, such that a due process defense is even arguably available.  *See* Ex. 4 (Fraudulent Certificate representing the losing candidate's nominated electors were "duly elected and qualified electors").  Defendant raises no colorable federal defense to the crimes charged.

---

[5]     The State notes that Defendant has filed a 52-page notice of removal.  *See* [Doc. 1]. Without prior authorization by this Court, a functional brief of this length appears inconsistent with Local Rule 7.1(D).  Should the Court find it necessary or helpful for the State to more fulsomely address Defendant's preemption arguments, *see* [Doc. 1] at 33-40, the State respectfully requests an opportunity for supplemental briefing.

### D. Defendant's Demand For Habeas Corpus Relief Under 28 U.S.C. § 2241 and/or Injunctive Relief

This Court's August 29, 2023 Order finding summary remand unavailable and setting an evidentiary hearing in this matter specifically reserves consideration of Shafer's insistence that the Supremacy Clause bars the indictment or the Court's jurisdiction to enter his requested relief to dismiss the pending criminal charges. [Doc. 4], 10 n.4.  The State's position is that (1) none of the relief requested has been justified with legal or factual basis,[6] (2) Defendant Shafer cannot meet the Section 1442 requirements, and consequently subject matter in this Court is not warranted, and (3) until this Court makes a determination on removal, it is premature to consider whether Defendant's state court remedies have been exhausted.  *See generally Taylor v. Sec'y Fla. Dep't. of Corr.*, 760 F.2d 1284, 1294 (11th Cir. 2014).  Given Shafer's argument on these points takes up a significant portion of his 52-page Notice of Removal, and the State is limited in this response

---

[6]   *See generally* 28 U.S.C. § 2283 (the Anti-Injunction Act) and prohibition against enjoining state court proceedings, unless the injunction falls within one of [the] three specifically defined exceptions."  *Atl. C. L. R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970); *Tokyo Gwinnett, LLC v. Gwinnett Cty.*, 940 F.3d 1254, 1267 (11th Cir. 2019) (the *Younger v. Harris*, 401 U.S. 37 (1971) decision spawned the famed *Younger* abstention doctrine, which "**requires** a federal court to abstain where a plaintiff's federal claims could be adjudicated in a pending state judicial proceeding" (internal quotation marks and citation omitted; emphasis added); *see Younger*, 401 U.S. at 45 (requiring "[t]he accused [to] first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection" (internal quotation marks omitted; citation omitted)).

to 25 pages, the State respectfully requests supplemental briefing on the issues raised if and only if the Court accepts subject matter jurisdiction.

## CONCLUSION

As the losing presidential candidate's nominated elector acting in furtherance of campaign (and personal) litigation and a wide-ranging plot to subvert the 2020 election, Defendant had no federal role standing alone or as an agent of any actual federal officer.  His actions and that of his co-defendants had no relation to the "color of federal office" of any actor—instead, he pursued a course of conduct as a private citizen, political ally, and co-conspirator.  Defendant has failed to support any of the requirements to satisfy removal pursuant to Section 1442(a), and his effort to remove should be denied.

Respectfully submitted, this 7th day of September 2023.

**FANI T. WILLIS**
**DISTRICT ATTORNEY**
**ATLANTA JUDICIAL CIRCUIT**

*/s/ Anna Green Cross*
Anna Green Cross
Special Prosecutor
Atlanta Judicial Circuit
Georgia Bar No. 306674
136 Pryor Street SW, Third Floor
Atlanta, Georgia 30303
anna@crosskincaid.com

F. McDonald Wakeford
Chief Senior Assistant District Attorney
Atlanta Judicial Circuit
Georgia Bar No. 414898
136 Pryor Street SW, Third Floor
Atlanta, Georgia 30303
Fmcdonald.wakeford@fultoncountyga.gov

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel hereby certifies that this pleading complies with

the Local Rules of this Court, including Local Rules 5.1(C) and 7.1(D) in that it is

double-spaced and composed in 14-point Times (New Roman font.

This 7th day of September 2023.

*/s/ Anna Green Cross*
Anna Green Cross
Special Prosecutor
Atlanta Judicial Circuit
Georgia Bar No. 306674
