## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

STATE OF GEORGIA

v.

DAVID J. SHAFER,

    **Defendant.**

CIVIL ACTION FILE

No. 1:23-CV-03720-SCJ

RE: NOTICE OF REMOVAL OF
FULTON COUNTY SUPERIOR
COURT INDICTMENT
NO. 23SC188947

## ORDER

This matter appears before the Court on David J. Shafer's Notice of
Removal, which includes a petition for habeas corpus and a request for equitable
and injunctive relief. Doc. No. [1].[1] The State of Georgia responded in opposition
of removal (Doc. No. [7]), and Shafer replied in support of his removal
(Doc. No. [14]).

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers
are those imprinted by the Court's docketing software.

In this Order, the Court primarily evaluates two relatively narrow questions: (1) whether Shafer is entitled to remove his criminal prosecution under the federal officer removal statute, and (2) whether Shafer is entitled to pretrial relief under habeas corpus or other equitable or injunctive relief. Having considered all of the arguments and evidence, the Court concludes that Shafer has not met his burden as to either issue. Therefore, the Court **DECLINES** to assume jurisdiction over the State's criminal prosecution of Shafer under 28 U.S.C. § 1455 and **REMANDS** the case to the Fulton County Superior Court.[2] The Court also **DENIES** Shafer's petition for habeas corpus and request for injunctive or equitable relief.

---

[2] As the Court has previously indicated, despite using the term "remand," the Court has not actually assumed jurisdiction over this case under Section 1455, and the State proceedings are ongoing. See Georgia v. Meadows, --- F. Supp.3d ---, No. 1:23-CV-03621-SCJ, 2023 WL 5829131, at *1 n.3 (N.D. Ga. Sept. 8, 2023). Nevertheless, Section 1455 itself conceives of some form of remand, 28 U.S.C. § 1455(b)(4), and other federal courts who have failed to find that federal jurisdiction exists over a criminal prosecution have "remanded" the prosecution to the state court. See, e.g., New York v. Trump, ---F. Supp. 3d----, No. 23 CIV. 3773 (AKH), 2023 WL 4614689, at *1 (S.D.N.Y. July 19, 2023).

## I.    BACKGROUND

Shafer was the former chairman of the Georgia Republican Party. Doc. No. [24] ("Hearing Tr.") Tr. 8:23. Pursuant to Georgia law, Shafer served as a 2020 presidential elector for the Republican presidential nominee—then-President Donald J. Trump. DX 4, Hearing Tr. 24:25–25:5. Following the 2020 Presidential election, Georgia certified that President Biden, the Democrat presidential nominee, won Georgia's presidential contest. Hearing Tr. 69:16–22; 100:14–16. Despite the initial election results certified in the State of Georgia in favor of the Democratic presidential ticket, on December 14, 2020, Shafer and fifteen other Republican-nominated presidential electors[3] met at the Georgia State Capitol to cast presidential elector ballots in favor of President Trump. Hearing Tr. 28:5–16;

─────────────────────

[3] Shafer along with the fifteen other individuals who met as the Republican-nominated presidential electors have been deemed "fake electors," in the media and were referred to as such by the State at the evidentiary hearing in this matter. Hearing Tr. 8:6-12; 68:18–21. Shafer's counsel urged that they be referred to as "contingent electors." Id. 9:7–11. Neither term, however, adequately describes the Republican-nominated presidential electors under federal or Georgia law. Federal law does not contain the term "contingent elector." The Georgia law specifically relating to electors in contested contests also does not use the term "contingent elector." O.C.G.A. § 21-2-503. In fact, the Georgia provision applies to the electors in contested elections who have presumptively won, which here would have been the Democrat-nominated presidential electors. Id. For the sake of precision and clarity, therefore, the Court will use the term "Republican-nominated presidential electors" to describe Shafer and the other fifteen individuals that attended the December 14, 2020 meeting.

DX 3. They met because President Trump and Shafer were challenging the Georgia election results in litigation in the Georgia state courts. Hearing Tr. 28:5–16; DX 3. Ultimately, the Georgia presidential election was declared for the Democratic presidential ticket, and the Senate counted Georgia's Democrat-nominated presidential electors' votes.

Based on these and other election-related activities, on August 14, 2023, a grand jury empaneled in the Superior Court of Fulton County, Georgia, returned a 41-count Indictment against Shafer and eighteen other defendants. Doc. No. [1]. The Indictment charges Shafer with eight of the counts—which include, being a part of criminal conspiracy in violation of Georgia's Racketeer Influenced Corrupt Organization (RICO) Act (Count One); impersonating a public officer (Count Eight); forgery in the first degree (Count Ten); false statements and writing (Count Twelve), criminal attempt to commit filing false documents (Count Fourteen); forgery in the first degree (Count Sixteen);  false statements and writings (Count Eighteen); and false statements and writings (Count Forty). Doc. No. [1-1], 3–4.

On August 21, 2023, Shafer filed a Notice of Removal of State Court Action in this Court. Doc. No. [1]. Shafer seeks to remove the criminal prosecution

4

against him pursuant to 28 U.S.C. § 1455, asserting federal officer jurisdiction under 28 U.S.C. § 1442. <u>See generally</u> <u>id.</u> On August 29, 2023, the Court declined summary remand of Shafer's removal action under 28 U.S.C. § 1445(b)(4) and ordered an evidentiary hearing to be held on the Notice of Removal, pursuant to Section 1455(b)(5). Doc. No. [4]. The Court also ordered the State to respond to Shafer's Notice of Removal (<u>id.</u>), which it did on September 7, 2023 (Doc. No. [7]). Shafer replied on September 15, 2023. Doc. No. [14].

On September 20, 2023, the Court held a consolidated hearing on Shafer's Notice of Removal with two other indicted co-defendants who served as Republican-nominated presidential electors (Shawn Micah Tresher Still and Cathleen Alston Latham). Doc. No. [22]. Shafer waived his right to appear at the evidentiary hearing, and neither the State of Georgia nor the Defendants presented any live witnesses. <u>Id.</u> Instead, Defendants successfully moved to admit five exhibits and orally presented their legal argument for federal jurisdiction. <u>Id.</u>; Doc. No. [25]). The Court also heard argument from the State in opposition to removal. Hearing Tr. 66:6–75:14.

At the conclusion of the hearing, the Court took the matter of its jurisdiction over the criminal prosecution under advisement. Hearing Tr.

5

110:20–23. Having considered the arguments put forth by the Parties, the evidence submitted at the evidentiary hearing, and the briefing on this matter, the Court now enters this Order. The Court concludes that the Court lacks federal jurisdiction over Shafer's removal of his criminal prosecution because Shafer is not a federal officer under 28 U.S.C. § 1442.

The Court also denies Shafer's petition for habeas corpus and request to enjoin the State from prosecuting Shafer (Doc. No. [1], 30-40) because Shafer has failed to carry his burden to show such relief is proper.

## II.    LEGAL STANDARD

### A.    <u>Federal Officer Removal Statute</u>

"[A] federal district court should be slow to act 'where its powers are invoked to interfere by injunction with threatened criminal prosecutions in a state court.'" <u>Cameron v. Johnson</u>, 390 U.S. 611, 618 (1968) (quoting <u>Douglas v. City of Jeannette</u>, 319 U.S. 157, 162 (1943)). An exception to those general concepts of federalism is the federal officer removal statute, 28 U.S.C. § 1442(a)(1). That statute allows for federal jurisdiction over "a criminal prosecution . . . against . . . any officer (or any person acting under that officer) of the United States . . . for or relating to any act under color of such office." Federal

officer removal "is an incident of federal supremacy and is designed to provide federal officials with a federal forum in which to raise defenses arising from their official duties." <u>Florida v. Cohen</u>, 887 F.2d 1451, 1453 (11th Cir. 1989) (per curiam) (citing <u>Willingham v. Morgan</u>, 395 U.S. 402, 405 (1969)). Given a preference for state courts conducting their state prosecutions, it has been suggested that a "more detailed showing" of the relation between the acts charged and the federal role at issue is required. <u>Willingham</u>, 395 U.S. at 409 n.4. Furthermore, federal courts must maintain a balance between what Section 1442 allows and respect for a State's right to deal with matters properly within its domain.

Shafer removed this criminal prosecution under 28 U.S.C. § 1455, which provides the procedure for removing a state criminal prosecution to a federal district court. "28 U.S.C. § 1455 'merely provides procedures that must be followed in order to remove a criminal case from state court when a defendant has the right to do so under another provision.'" <u>Maine v. Counts</u>, No. 22-1841, 2023 WL 3167442, at *1 (1st Cir. Feb. 16, 2023) (quoting <u>Kruebbe v. Beevers</u>, 692 F. App'x 173, 176 (5th Cir. 2017) (per curiam)). Upon filing a notice of removal, the Court must promptly determine whether the notice and its attachments clearly fail to establish the Court's subject matter jurisdiction, and if they do, the

7

case is summarily remanded to state court. 28 U.S.C. § 1455(b)(4). If summary remand is not granted, then the district court must "promptly" hold an evidentiary hearing to determine the "disposition of the prosecution as justice shall require." Id. at § 1455(b)(5). Based on the facts adduced at the hearing and the arguments put forth by the Parties, the Court must determine whether the Defendant has met his burden in establishing that the Court has subject matter jurisdiction over his criminal prosecution. Trump, 2023 WL 4614689, at * 5 (citing United Food & Comm. Workers Union v. CenterMark Props. Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994)).

Under 28 U.S.C. § 1442, the question of the scope of a federal officer's authority contains issues of law and fact. See Nadler v. Mann, 951 F.2d 301, 305 (11th Cir. 1992) ("[D]etermination[s] of whether an employee's actions are within the scope of his employment involve[ ] a question of law as well as fact.").

Ultimately, for removal under Section 1455 to be proper, the removing party must show that there is a basis for the federal court to exercise jurisdiction over the criminal prosecution. See Leonard v. Enterprise Rent a Car, 279 F.3d 967, 972 (11th Cir. 2002) ("A removing defendant bears the burden of proving proper

8

federal jurisdiction."). If the Court lacks federal jurisdiction, then the case cannot proceed in this forum.

The Supreme Court has cautioned that "an airtight case on the merits in order to show the required causal connection" is not required and that courts are to "credit" the movant's "theory of the case" for the elements of the jurisdictional inquiry.[4] Jefferson Cnty. v. Acker, 527 U.S. 423, 432 (1999). "The point is only that the officer should have to identify as the gravamen of the suit an act that was, if not required by, at least closely connected with, the performance of his official duties." Id. at 447 (Scalia, J., dissenting).

### B.   Pretrial Habeas Corpus

"[F]ederal habeas corpus does not lie, absent 'special circumstances,' to adjudicate the merits of an affirmative defense to a state criminal charge prior to a judgment of conviction by a state court." Braden v. 30th Judicial Circuit Court, 410 U.S. 484, 489 (1973) (citing Ex parte Royall, 117 U.S. 241, 253

---

[4] The Court notes that this language in Acker refers to the colorable defense prong of the analysis. Acker, 527 U.S. at 432. Nevertheless, the Court will evaluate the theory of the case as it relates to the color of office because at least one district court recently has applied it in this manner. See Georgia v. Heinze, 637 F. Supp. 3d 1316, 1322 (N.D. Ga. 2022).

(1886)).  "[A]bsent extraordinary circumstances federal courts should not enjoin pending state criminal prosecutions." New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 364 (1989) (citing Younger v. Harris, 401 U.S. 37, 43–44 (1971)).  "[W]hen a petitioner seeks federal habeas relief prior to a pending state criminal trial, the petitioner must satisfy the Younger abstention hurdles before the federal courts can grant such relief." Lewis v. Broward Cnty. Sheriff Off., No. 20-14603, 2021 WL 5217718, at *1 (11th Cir. Nov. 9, 2021) (per curiam) (quoting Hughes v. Att'y Gen. of Fla., 377 F.3d 1258, 1262 (11th Cir. 2004)).[5] The three Younger exceptions to the abstention doctrine are: (1) there is evidence of state proceedings motivated by bad faith; (2) irreparable injury would occur; or (3) there is no adequate, alternative state forum where constitutional issues can be raised. Id. at 45, 53–54.

## III.   ANALYSIS

The Court has no jurisdiction over the State's prosecution of Shafer under the federal officer removal statute because Shafer failed to carry his burden in establishing that he is a federal officer or that he acted under the direction of a

---

[5]  The Court notes that Shafer argued that the Younger doctrine does not apply in this case. Doc. No. [14], 13–14. The Court discusses Younger's applicability *infra*.

federal officer. The Court also denies Shafer's Petition for habeas corpus because Shafer has not sufficiently established an exception to the <u>Younger</u> doctrine and denies Shafer's request for equitable or injunctive relief. The Court first considers Shafer's federal officer arguments and then turns to his habeas petition and equitable request.

    **A.**    <u>**Federal Officer Removal**</u>

    *1.*    *Who is a Federal Officer?*

Shafer filed his notice of removal of this case to federal court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). The federal officer removal statute applies to "any officer . . . of the United States, or any agency thereof" or "any person acting under that officer." <u>Id.</u>

The questions before this Court are whether (1) Shafer was a federal officer when he acted as a Republican-nominated presidential elector or (2) whether Shafer was acting under a federal office during the actions in the Indictment. The answer to both questions is no.

    **a)**    <u>**Shafer as a federal officer himself**</u>

The Court ultimately concludes that Shafer was not a federal officer when he acted as a Republican-nominated presidential elector because presidential

electors are not federal officers. The Court first broadly addresses the role of a presidential elector and then considers the nuances of Shafer's specific status as a Republican-nominated presidential elector.

### (1)    Presidential electors

The Court first determines that presidential electors are not federal officers. A number of considerations, including the text of the Electors Clause, the Supreme Court's prior statements, in *dicta*[6], on presidential electors, and the general purpose of the federal officer statute (in the light of presidential electors' role), all support this conclusion.

_____

[6] Shafer argues that these statements regarding the status of presidential electors are not dispositive of the federal officer question, in part, because they are dicta, and because they relate to the appointment of presidential electors. Doc. No. [14], 7. To the extent that the pronouncements in the subsequent cases are dicta, "[federal courts] do not [ ] consider[] dicta from the Supreme Court lightly. Rather, [courts] according it appropriate deference . . . As we have frequently acknowledge, Supreme Court dicta have a weight greater than ordinary judicial dicta as prophecy of what that Court might hold; accordingly [courts] do not blandly shrug them off because they were not a holding." Schwab v. Crosby, 451 F.3d 1308, 1326 (11th Cir. 2006) (quoting United States v. Camargo, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000)). The Court sees no reason to find an exception to the Supreme Court's statement that presidential electors are not federal officers. The Court particularly finds that Green, the case upon which all the other Supreme Court cases rely, is highly relevant as it specifically states that the casting, certifying, and the transmitting of the ballots does not make presidential electors federal officers. 134 U.S. at 379. Whether the act of balloting transformed Shafer into a federal officer is one of the questions before this Court. Hearing Tr. 34:19-25.

12

The Electors Clause provides:

> Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress: but no Senator or Representative, or Person holding an Office of Trust or Profit under the United States, shall be appointed an Elector.

U.S. Const. art. II, § 1, cl. 2.

The Court notes that the text of the Electors Clause begins by expressly delegating the power to appoint presidential electors to the States. It goes on to qualify that this power has some constitutional limits, namely "*Person holding an Office of Trust . . . under the United States,*" are excluded from serving as a presidential elector." Id. (emphasis added); see also The Federalist No. 68 (Alexander Hamilton) (explaining the purpose of the presidential electors is to safeguard against corruption and influence by the President; therefore, "they have excluded from eligibility to this trust, all those who from situation might be suspected of too great devotion to the President in office. No senator, representative, or other *person holding a place of trust or profit under the United States can be of the numbers of the electors*." (emphasis added)). The plain definition of officer is "[s]omeone who holds an office of trust, authority, or command"

13

Officer, Black's Law Dictionary (11th ed. 2019); see also Operation Rescue Nat'l v. United States, 975 F. Supp. 92 (D. Mass. 1997) (citing Lamar v. United States, 241 U.S. 103, 113 (1916) (using dictionaries to determine whether an individual is an officer under Section 1442).

By design, therefore, presidential electors cannot be individuals who hold a place of trust or profit or authority from the United States and thus, do not meet the office of trust category of being a federal officer. Additionally, the role of presidential electors is to meet in their respective states, cast their ballots, and transmit them to Congress. U.S. Const. art. II, § 1, cls. 2–3, amend. XII. There is nothing about these actions or the text of the Constitution that gives a presidential elector authority or command over any federal activities. Accordingly, including presidential electors within the category of federal officers is inconsistent with the plain meaning of the word "officer."

Furthermore, in various contexts since 1890, the Supreme Court has stated that presidential electors are not federal officers. See Fitzgerald v. Green, 134 U.S. 377, 379 (1890) ("Although the [presidential] electors are appointed and act under and pursuant to the [C]onstitution of the United States, they are no more officers or agents of the United States than are the members of the state

14

legislatures when acting as electors of federal senators, or the people of the states when acting as electors of representatives in congress."); <u>McPherson v. Blacker</u>, 146 U.S. 1, 35 (1892) (same); <u>Burroughs v. United States</u>, 290 U.S. 534, 545 (1934) ("While presidential electors are not officers or agents of the federal government . . . they exercise federal functions under, and discharge duties in virtue of authority conferred by, the Constitution of the United States."); <u>Ray v. Blair</u>, 343 U.S. 214, 224 (1952) ( "The presidential electors exercise a federal function in balloting for President and Vice-President but they are not federal officers or agents any more than the state elector who votes for congressmen."); <u>Oregon v. Mitchell</u>, 400 U.S. 112, 211 n.89 (1970) (Harlan, J., dissenting) ("[P]residential electors act by authority of the States and are not federal officials."); <u>Bush v. Gore</u>, 531 U.S. 98, 112 (2000) (Rehnquist, CJ., concurring) ("While presidential electors are not officers or agents of the federal government . . . they exercise federal functions under, and discharge duties in virtue of authority conferred by, the Constitution of the United States.").To be sure, none of these Supreme Court statements arose under the federal officer removal statute. Nevertheless, the Court finds these statements persuasive, even

15

if not binding, authority for resolving the instant question about whether Shafer

and his other Republican-nominated presidential electors were federal officers.

Shafer's argument that the act of balloting distinguishes his case from these

prior cases commenting on the appointment of presidential electors does not

persuade the Court otherwise. Even though electors are engaging in a federal

functions when they meet and cast their ballots, that is insufficient to make

someone a federal officer. To find otherwise would convert all citizens who can

lawfully vote into federal officers when they cast their ballot for U.S. House of

Representatives. U.S. Const. art. I, § 2, cl. 1; <u>Green</u>, 134 U.S. at 377. Furthermore,

the Constitution does not provide for any action that the presidential electors

may undertake on behalf of the United States. U.S. Const. art. II, § 1, cls. 2–3;

amend. XII.

Likewise, Shafer's appeal to <u>U.S. Term Limits, Inc. v. Thornton</u>, 514 U.S.

779, 805 (1995) is not compelling. Shafer specifically argues that the federal officer

removal statute applies to him because presidential electors are akin to members

of the United States Congress, who are considered federal officers for purposes

of removal. Doc. No. [1], 17 (citing <u>Thornton</u>, 514 U.S. at 805). The Supreme Court

in <u>Thornton</u> (a non-removal case expressly examining Article II, Section 2 of the

Constitution) rejected Arkansas's increased qualifications for congressional candidates, emphasizing that congress members are paid from the federal Treasury and that "each member of Congress is an officer of the union, deriving his powers and qualifications from the Constitution, and neither created by, dependent upon, nor controllable by the states." Thornton, 514 U.S. at 803.

Even assuming Thornton's test applies to the instant question, presidential electors would not be federal officers. Presidential electors, by design, are not compensated by the federal Treasury, but are paid pursuant to state law. See U.S. Const. art. II, § 1, cl. 2 ("[N]o Senator, Representative, or other Person holding a . . . *Profit under the United States*, shall be appointed an Elector") (emphasis added); see also O.C.G.A. § 21-2-13 (specifying that Georgia's presidential electors are compensated form the State's Treasury). Moreover, in contrast to the Constitution's express qualifications for congress members,[7]

---

[7] "No Person shall be a Representative who shall not have attained to the Age of twenty five Years, and been seven Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State in which he shall be chosen." U.S. Const. art. I, § 2, cl. 2. "No Person shall be a Senator who shall not have attained to the Age of thirty Years, and been nine Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State for which he shall be chosen." U.S. Const. art. I, § 3, cl. 3.

Thornton acknowledged that the States maintain vast amounts of control over the qualifications of their presidential electors. Id. at 804 (quoting U.S. Const. art. II, § 1, cl. 2); see also The Federalist No. 51 (Alexander Hamilton)[8] ("To have submitted it to the legislative discretion of the States, would have been improper . . . for the [ ] reason that it would have rendered too dependent on the State governments that branch of the federal government which ought to be dependent on the people alone."). Thus, Thornton does not support finding presidential electors are federal officers.

Finally, the purpose of federal officer removal is not served by finding presidential electors to be federal officers. The purpose of federal officer removal is to protect actions taken on behalf of the federal government from state interference. More specifically, Section 1442 is to protect federal officers from being prosecuted or sued in a State Court for "acting [within the States]" in the

---

[8] "The opinion of the *Federalist* has always been considered as of great authority. It is a complete commentary on our constitution; and is appealed to by all parties in the questions to which that instrument has given birth." Cohens v. Virginia, 19 U.S. 264, 418 (1821); see also Thornton, 514 U.S. at 806 (indicating that the Federalist Papers are "available affirmative evidence indicat[ing] the Framers' intent").

"scope of their [federal] authority" when their actions were "warranted by the Federal authority they possess[.]" Tennessee v. Davis, 100 U.S. 257, 263 (1880).

The function of presidential electors does not implicate these federalism and supremacy concerns. Neither the Electors Clause nor any other constitutional provision suggests that the presidential electors are acting on behalf of the United States or are undertaking any action on behalf of the United States. Instead, the Supreme Court has explained, the "[Electors] Clause[] [is an] express delegation[] *of power to the States* to act with respect to federal elections." Thornton, 514 U.S. at 805 (emphasis added). Presidential Electors "*act by authority of the state* that in turn receives its authority from the federal constitution." Ray, 343 U.S. at 224–25 (emphasis added); cf. Moore v. Harper, 600 U.S. 1, 20 (2023) ("[I]n choosing Presidential electors, the Clause 'leaves it to the [State] legislature exclusively to define the method of effecting the object.'") (quoting McPherson, 146 U.S. at 27). Davis's explanation of the rationale for the federal removal statute starkly contrasts the source of power and authority vested in presidential electors. Because the electors receive their authority from the states, finding presidential electors are federal officers would frustrate the purpose of the federal officer removal statute.

19

In sum, based on the text of the Constitution, the Supreme Court's historical statements and precedents, and the purpose of the federal officer removal statute, the Court determines that presidential electors are not federal officers under Section 1442.

> **(2)     *Shafer as a Republican-nominated presidential elector and contingent electors more generally***

Moreover, the Court's conclusion that Shafer, as a Republican-nominated presidential elector, was not a federal officer is supported by the fact that at the time of his alleged actions, he was not yet (and indeed never became) a 2020 presidential elector for the State of Georgia. Even assuming Shafer was a contingent presidential elector,[9] contingent presidential electors are a creation of *Georgia* state law, not federal law. See O.C.G.A. § 21-2-503(a) (statute that contemplates "contingently" elected officials). There is no federal corollary that provides for contingent presidential electors.

_____

[9] The Court does not assume that he was a contingent elector because, as noted above, contingent presidential electors, under Georgia law, are those presidential electors who presumptively won the election, not the electors who presumptively lost the election. O.C.G.A. § 21-5-503.

Shafer cites a 1960 Hawaii case to show that contingent presidential electors are serving as federal officers when they convene and cast ballots. Doc. No. [1], 23. In that case, a Hawaiian trial court held that under state law, the electors for President John F. Kennedy were the duly elected presidential electors resulting from the November 1960 Presidential Election and could challenge the election results. DX 5. The Court finds that <u>Lum</u> is not particularly helpful to deciding this case because neither the findings of facts or conclusions of law, in that case, discuss the 1960 Hawaiian Democrat presidential electors' meeting, casting ballots, or transmitting ballots to Congress. DX 5. The findings of fact and conclusions of law do not address the constitutionality of undertaking these actions, or whether the Democrat presidential electors were federal officers.

Accordingly, the Court finds that Shafer was not a federal officer when operating as a Republican-nominated presidential elector.

### b)   <u>Agents of Federal Officers</u>

The Court also finds that Shafer has not met his burden in showing that he was acting under a federal officer. Shafer, alternatively, argues that he was acting under the direction of a federal officer for purposes of Section 1442 removal. The Court also rejects this basis for federal jurisdiction. The Eleventh Circuit has

21

propounded a three-part test for determining whether a private individual was "acting under" a federal officer. First, Shafer "must show that [he] is a person within the statute's meaning who acted under a federal officer. 28 U.S.C. § 1442(a)(1). Second, [Shafer] must show that [he] performed the actions for which [he] is being sued under color of federal office." Caver v. Cent. Ala. Elec. Coop., 845 F.3d 1135, 1142 (11th Cir. 2017). And third, Shafer "must raise a colorable federal defense." Id.

"[A] 'private person's acting under must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior.'" Id. at 1143 (quoting Watson v. Phillip Morris Cos., 551 U.S. 142, 152 (2007) (internal punctuation omitted). "[T]he private person must help federal officers fulfill a basic governmental task that the government otherwise would have had to perform." Id. (citing Watson, 551 U.S. at 153–54). When a person is "'simply *complying*' with federal law, . . . [he is] '*not*' br[ought] . . . within the scope of § 1442(a)(1)." Id. (quoting Watson, 551 U.S. at 152). "[T]he relationship between the private person and the federal officer must be one of 'subjection, guidance, or control.'" Id. (quoting Watson, 551 U.S. at 151).

In <u>Watson</u>, the Supreme Court held that although the private entity undertook actions pursuant to federal statutes and regulations, the entity was not "acting under" a federal officer pursuant to Section 1442(a)(1). <u>Watson</u>, 551 U.S. at 153. By contrast, in <u>Caver</u>, the Eleventh Circuit held that Central Alabama Electric Cooperative ("CAEC") was an agent under the Rural Electrification Administration ("REA") and qualified for removal under Section 1442. <u>Caver</u>, 845 F.3d at 1143–44. The Eleventh Circuit reasoned that Congress and the President created the REA, which "exercise[d] extensive supervision over the planning, construction and operation of" CAEC, and the regulatory scheme established the REA's "significant level of control" over CAEC. <u>Caver</u>, 845 F.3d at 1143.

Shafer argues that he was "acting under" federal officers for Section 1442 removal because (1) the attorneys for the President and Shafer directed the Republican-nominated presidential electors' actions, and (2) he assisted the President of the Senate and Archivist in performing their duties under the Electoral Count Act ("ECA"). Doc. No. [1], 19–20. The Court considers each argument in turn and ultimately determines that these actions do not establish that Shafer was acting under a federal officer.

23

### (1)    Acting under private attorneys

With respect to Shafer acting under the attorneys' directions, the Court finds that these activities were not directed by a federal officer. Shafer argued that "[a]ttorneys for the President and Shafer specifically instructed Shafer, verbally and in writing, that the Republican elector's meeting and casting their ballots on December 14, 2020 was consistent with counsels' advice." Doc. No. [1], 19. Additionally, the Notice of Removal states that the impetus for the meeting was because "President Trump had filed a challenge to the certified election results." Doc. No. [1], 6.

Private litigation is "unofficial conduct" and falls outside of the ambit of the President's exercise of executive power. See Clinton v. Jones, 520 U.S. 681, 701–05 (1997) (concluding that "the federal courts have the power to determine the legality of [the President's] unofficial conduct" because "[t]he litigation of questions that relate entirely to the unofficial conduct of the individual who happens to be the President poses no perceptible risk of misallocation of either judicial power or executive power"). Based on the evidence presented—namely, the email received from the attorneys in question and the transcript of the Republican-nominated presidential electors' meeting—the Court concludes that

24

any acts taken under the guidance of these attorneys were not acts taken under federal officers.

Shafer attached the email from the attorneys for the President and Shafer to his Notice of Removal. Doc. No. [1-2]. That email was sent to Shafer from a private attorney from the law firm of Fox Rothschild and copied four other private attorneys. Doc. No. [1-2]. Notably, none of the attorneys listed on the email have government email addresses, suggesting they were not acting on behalf of the Department of Justice or the White House Counsel's Office.

The pertinent portion of the email states: "*[b]ased upon the developments both in our state case as well as in the Supreme Court*, I am reconfirming the importance and our collective advice that our slate of delegates meet on December 14th (per the Federal Deadline) and cast their ballots in favor of President Trump and specifically per Georgia Election Code." Doc. No. [1-2], 2 (emphasis added). This email thereby directly connects the purpose of the Republican-nominated presidential electors' meeting to President Trump's private litigation. Additionally, the transcript of the Republican-nominated presidential electors' meeting shows that the meeting, at least in part, related to private litigation. For example, at the start of the meeting, Shafer stated:

25

> The President has filed a contest to the certified returns. That contest – is pending. It's not been decided or even heard by any judge with authority to hear it. And so in order to preserve *his rights*, it's important that the Republican nominees for Presidential Elector meet here today and cast their votes.

DX. 3, Tr. 3:7–13 (emphasis added). Later in the meeting, Shafer introduced "a lawyer for President Trump." Id. at 7:15. This lawyer later explained that the meeting was occurring because "we're conducting this as – as Chairman Shafer said, we're conducting this because the contest of the election in Georgia is ongoing." Id. at 7:17–20.

For Shafer to act under the authority of a federal officer, the actions "must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." Caver, 845 F.3d at 1143 (quoting Watson, 551 U.S. at 147). Because the President's private litigation is "unofficial conduct," the Court finds that any directives from the attorneys in this private litigation to engage in activities that would benefit the litigation are not related to any federal officer duties of the President.[10]

_____

[10] Additionally, the evidence in the Record is that a private attorney encouraged Shafer

### (2)   Acting under the President of the Senate and the United States Archivist

Shafer also argues that he undertook these actions to assist the President of the Senate and the United States Archivist. Doc. No. [1], 19. The ECA[11] provides the timing requirements for states to submit their electoral ballots to Congress and the United States Archivist. 3 U.S.C. §§ 7, 11, 12 (2021). It also outlines the duties of the United States Archivist and the President of the Senate for receiving and counting the Electoral votes. 3 U.S.C. §§ 6, 15 (2021). Specifically, the Act provides that the Electors shall meet on the first Monday

_____

and the other Republican-nominated presidential electors to hold a meeting to "preserve the best chance for Georgia to ultimately support the President's re[-]election." Doc. No. [1-2], 2. There is no indication in the email that the President knew of the attorneys' directive or authorized the instructions to the Republican-nominated presidential electors to hold such a meeting. Thus, in order for the Court to find that Shafer was "acting under" the President, it would have to find that the attorneys were themselves acting under the President and had the authority to delegate tasks to the Republican-nominated presidential electors. Additionally, as a matter of law, the Court would have to find that the federal officer removal statute applies when there is a non-federal officer intermediary between the federal officer and the alleged agent. Because the Court finds that the activities were taken, at least in part, to advance President Trump's and the Trump campaign's bid for reelection, which is unofficial conduct, the Court declines to determine whether the federal officer removal statute's reach is so long.

[11] The Electoral Count Act was amended by Congress in 2022. For purposes of this litigation, the Court will evaluate the Act as it existed prior to January 6, 2021, which was in effect during the time of the activities alleged in the Indictment.

following the second Wednesday in November. 3 U.S.C. § 7 (2021). In this case, the meeting was to be held on December 14, 2020 at the Georgia State Capitol. Id.; O.C.G.A. § 21-2-11. Moreover, the Governor, as soon as practicable after the final ascertainment of the appointed electors, must issue a certificate of ascertainment of appointment of electors, which lists the names of the electors, and transmit the certificates to the United States Archivist and six certificates to each elector. 3 U.S.C. § 6 (2021). Under Georgia law, the presidential electors are elected by popular vote during the November election. O.C.G.A. § 21-2-10.  If the State has made its final determination of any controversy over the election six days before the elector meeting, then those electors are conclusively the electors for the state. 3 U.S.C. § 5 (2021) (the "safe harbor provision"). In this case, the safe harbor deadline was December 8, 2020.

At the meeting of the presidential electors, the electors each sign six certificates of their votes and attach these certificates to their certificates of ascertainment of appointment of electors. 3 U.S.C. § 9 (2021). The presidential electors then transmit their certificates of votes to the President of the Senate, the chief election officer of the State, the Archivist of the United States, and the judge of the district in which the electors have been assembled. 3 U.S.C. § 11 (2021). In

28

Georgia, the certificates would go to the Georgia Secretary of State, the Chief Judge for the Northern District of Georgia, the Archivist of the United States, and the President of the Senate. If the certificates do not reach the President of the Senate or the Archivist by the fourth Wednesday in December, the President of the Senate contacts the Georgia Secretary of State and the Chief Judge for the Northern District of Georgia to transmit the ballots to the U.S. Capitol. 3 U.S.C. §§ 12, 13 (2021).

With these aforementioned procedures in mind, it is unclear how the Republican-nominated presidential electors' relationship with these federal officers was one of "subjection, guidance, or control." Caver, 845 F.3d at 1143 (quoting Watson, 551 U.S. at 151). Certainly, the presidential electors must meet and submit their certificates to the Archivist of the United States and the President of the Senate. But there is no evidence that the President of the Senate or the Archivist directed the Republican-nominated presidential electors to undertake any activity. In fact, under the federal legislative scheme, if the certificate of votes is not received by the President of the Senate or the Archivist of the United States by a particular date, the statute directs the Georgia Secretary of State and the Chief Judge for the Northern District of Georgia to take action—

that is, transmitting copies of the certificates to the U.S. Capitol. 3 U.S.C. §§ 12, 13 (2021). At best, the presidential elector's role is to *comply* with the Electoral Count Act's statutory requirements, which is insufficient to meet the "acting under" requirement. <u>Caver</u>, 845 F.3d at 1143 ("When a person [is] 'simply *complying*' with federal law," they are "'not' br[ought] . . . within the scope of § 1442(a)(1).'" (quoting <u>Watson</u>, 551 U.S. at 152)).

Accordingly, the Court finds that the meeting of the Republican-nominated presidential electors, pursuant to Shafer's argument, is not under the direction of the President of the Senate or the Archivist but rather constitutes mere compliance with federal statutes. Mere compliance is insufficient to show a non-governmental actor was "acting under" a federal officer for purposes of Section 1442 removal. Accordingly, the Court finds that Shafer was not "acting under" the President of the Senate or the Archivist for the United States.

*   *   *   *

In sum, the Court finds that presidential electors, or the Republican-nominated presidential electors in this case, are not federal officers. The Court also finds that Shafer failed to adduce sufficient evidence to show that he was acting under the direction of a federal officer. Accordingly, the Court lacks

30

subject matter jurisdiction over Shafer's criminal prosecution under Section 1442 because Shafer was not a federal officer.

### 2. Scope of Office and Colorable Defenses

The Court declines to rule on Shafer's arguments about the scope of office and his enumerated colorable defenses. For the Court to exercise subject matter jurisdiction under the federal officer removal statute, Shafer must carry his burden as to all three requirements of Section 1442 — (1) he was a federal officer, (2) acting under the color of his office, and (3) has a colorable federal defense. Caver, 845 F.3d at 1142. Failure to satisfy any of these requirements is fatal to Shafer's removal action.

Shafer failed to meet his burden as to the first precondition; therefore, the Court finds that it cannot exercise subject matter jurisdiction over his prosecution. With the evidence currently before the Court, it cannot undertake the "relates to the color of the office" prong. Shafer had the burden of establishing his federal office. Because the Court ruled that Shafer was not a federal officer and was not acting under a federal officer, the Court cannot determine what federal office, if any, that his actions were taken under.

31

Additionally, judicial restraint instructs this Court to decline to rule on whether Shafer has a colorable federal defenses. Shafer may raise these arguments in the State court; thus, the Court declines to rule on them. In short, Shafer's notice of filing of removal must be remanded for lack of jurisdiction under Section 1442.

### B.   Habeas Corpus[12]

Shafer also is not entitled to habeas corpus[13] because he has not applied the proper test for pre-trial habeas relief. "[W]hen a petitioner seeks federal habeas relief prior to a pending state criminal trial, the petitioner must satisfy the Younger abstention hurdles before the federal courts can grant such relief." Lewis, 2021 WL 5217718, at *1 (quoting Hughes, 377 F.3d at 1262). Shafer argues

---

[12]  A petition of habeas corpus is its own individual basis for subject matter jurisdiction. 28 U.S.C. § 2241.

[13]  Pursuant to 28 U.S.C. § 2241(c), which governs pretrial habeas corpus petitions, "[t]he writ of habeas corpus shall not extend to a *prisoner* unless . . . " 28 U.S.C. § 2241(c); Stacey v. Warden, 854 F.2d 401, 403 n.1 (11th Cir. 1988) (per curiam). Three of the five subsections relate to custody. 28 U.S.C. § 2241(c). Shafer does not specifically allege under which section of 2241(c) he seeks habeas relief. Doc. No. [1], 30–50. It is unclear, moreover, whether Shafer qualifies as a "prisoner" or, to the extent relevant, if he is "in custody" under this Statute. Shafer has been arraigned but is not in custody and is out on bond awaiting trial. Because the Court finds that Shafer did not meet his burden in establishing habeas relief, the Court declines to determine the foundational issue of whether he is a prisoner or would qualify as "in custody" for purposes of Section 2241(c).

that <u>Younger</u> does not apply "to claims that federal authority immunizes an individual, like Shafer, from state prosecution." Doc. No. [14], 14.

Shafer's cited authorities for this proposition are not criminal cases and do not involve petitions for habeas corpus. <u>See</u> <u>Armstrong v. Exceptional Child Ctr., Inc.</u>, 575 U.S. 320, 326 (2015); <u>Smith v. Meese</u>, 821 F.2d 1484 (11th Cir. 1987); <u>United States v. McLeod</u>, 385 F.2d 734 (5th Cir. 1967). Under the Eleventh Circuit's relevant precedents, the Court rejects Shafer's arguments that <u>Younger</u> does not apply in this case. Moreover, because Shafer's brief did not make any efforts to apply the <u>Younger</u> doctrine in its request for habeas relief, Shafer failed to carry his burden, and the Court denies his habeas petition.

As far as the denial of Shafer's habeas petition is concerned, a certificate of appealability will not be issued. For a petitioner to obtain a certificate of appealability, he must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing requires that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (citation and internal quotation marks

33

omitted). And, where a petition is denied on procedural grounds, he "must show not only that one or more of the claims he has raised presents a substantial constitutional issue, but also that there is a substantial issue about the correctness of the procedural ground on which the petition was denied." Gordon v. Sec'y, Dep't of Corrs., 479 F.3d 1299, 1300 (11th Cir. 2007) (per curiam) (citations omitted). "A 'substantial question' about the procedural ruling means that the correctness of it under the law as it now stands is debatable among jurists of reason." Id.

Shafer did not apply the correct standard for receiving pretrial habeas relief. Thus, reasonable jurists would not find the denial of Shafer's Section 2241 motion debatable, and a certificate of appealability is **DENIED**.

### C.    Equitable Relief

Finally, the Court determines that Shafer is not entitled to equitable relief. Shafer requests that the Court "[a]ssert jurisdiction of this matter under either habeas or equitable relief and terminate or prohibit the State's prosecution." Doc. No. [1], 51. Other than habeas corpus, Shafer does not assert any statute or legal basis for his request for equitable relief. Accordingly, the Court finds that

Shafer has not met his burden in establishing the method upon which the Court may travel to award equitable relief and denies this request.

\* \* \* \*

The Court finds that Shafer has not sufficiently shown that any of the exceptions to the <u>Younger</u> doctrine apply in this case or any other equitable basis for this Court to have jurisdiction over the state criminal prosecution against him. Accordingly, the Court denies Shafer's pretrial habeas petition and abstains from interfering in the State criminal prosecution.

## IV.   CONCLUSION

For the foregoing reasons, the Court **REMANDS** the State's criminal prosecution of David J. Shafer under Section 1455 to Fulton County Superior Court. The Court also **DENIES** Shafer's habeas corpus petition and **DECLINES** to issue a certificate of appealability. Finally, the Court **DENIES** Shafer's request for equitable relief. In the light of these holdings, the Court **DIRECTS** the Clerk of Court to **CLOSE** this case.

The Court's conclusion is not to suggest any opinion about the State's case against Shafer. The Court makes no ruling on the merits of the charges against Shafer or any defense that he may offer. Shafer maintains the presumption of

innocence and bears no burden of proving that he did not commit the crimes charged against him. The burden of proof beyond a reasonable doubt remains with the State. This Order's sole determination is that there is no federal jurisdiction over the criminal case. The outcome of this case will be for a Fulton County judge and trier of fact to ultimately decide.

IT IS SO ORDERED this ___29th___ day of September, 2023.

HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

36